(701 P.2d 1339)

No. 57,356

STATE OF KANSAS *Appellee*, v. PAUL MOGENSON, *Appellant.*

Petition for review denied September 27, 1985.

Opinion filed June 27, 1985.

*William H. Seiler, Jr.*, of Bremyer & Wise, P.A., of McPherson, for appellant.

*Charles I. Prather*, assistant county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before PARKS, P.J., ABBOTT and MEYER, JJ.

ABBOTT, J.: This is a direct appeal by the defendant, Paul Mogenson, from his convictions of aggravated battery (K.S.A. 21-3414), aggravated burglary (K.S.A. 21-3716), and terroristic threat (K.S.A. 1984 Supp. 21-3419[a]). The victim of these crimes was Mogenson's estranged wife, Jeanne.

The defendant asserts two errors were committed by the trial court: (1) admitting evidence of prior incidents between the defendant and his estranged wife; and (2) the response given to the jury's question regarding the aggravated burglary instruction.

I. Evidence of Other Crimes or Civil Wrongs.

The trial judge overruled defendant's motion in limine and permitted the defendant's wife to testify about numerous incidents which occurred during the couple's stormy marital relationship and impending divorce. The trial judge admitted the evidence pursuant to K.S.A. 60-455 for the purpose of proving the defendant's intent and motive. A corresponding limiting jury instruction was given in compliance with PIK Crim. 2d 52.06.

K.S.A. 60-455 is an evidentiary rule providing for limited admissibility. As set forth in the statute, evidence of other crimes or civil wrongs is admissible only for certain purposes.

The evidence must satisfy three criteria as determined by the

trial court to be admissible. The other crimes must be *relevant* to proving a material fact; the material fact must be a *substantial issue* in the case; and, under a *balancing* test, the probative value of the evidence must outweigh its prejudicial effect. *State v. Bly,* 215 Kan. 168, 523 P.2d 397 (1974).

The defendant concedes that his intent is a substantial issue in the case. He has insisted throughout the proceedings that his presence in the house on the day in question was to retrieve his hairbrush which was in his son's possession and not to inflict injury upon his wife. The defendant's contentions on appeal go to the first and third prongs of the test discussed in *Bly.* He contends the other crimes evidence is not relevant to prove intent because of dissimilarities between the admitted evidence and the present charges. The defendant's chief complaint, however, is that the prejudicial effect of the evidence outweighs its probative value.

Defendant's relevancy argument is without merit. The previous incidents need only provide a basis for an inference of intent to injure. Prior incidents, which included choking the victim, holding her at gunpoint, and threatening her with death if the divorce proceeded, are probative to show defendant's intent. The remoteness in time of some of the incidents affects the weight, and not the admissibility, of the evidence. *State v. Carter,* 220 Kan. 16, 20, 551 P.2d 821 (1976). As we view the evidentiary record, the previous occurrences between defendant and his wife were relevant on the critical issue in this case—defendant's intent. *State v. Rupe,* 226 Kan. 474, 601 P.2d 675 (1979); *State v. Fisher,* 222 Kan. 76, 563 P.2d 1012 (1977).

With regard to defendant's contention of undue prejudice, we conclude that the probative value of the evidence outweighs any prejudicial effect. The dangers noted in *State v. Davis,* 213 Kan. 54, 515 P.2d 802 (1973)—confusion of the issues, misleading of the jury, undue delay, and needless presentation of cumulative evidence—are not present here. The continuing course of conduct established by the prior incidents clearly aided the jury in ascertaining the defendant's intent on this occasion. Thus, no error has been demonstrated in admitting the evidence pursuant to 60-455.

In any event, the evidence of prior incidents is admissible independent of 60-455. Kansas courts have allowed evidence of

prior acts of a similar nature between the defendant and the victim independent of 60-455 so long as the evidence is not offered for the purpose of proving distinct offenses. The evidence is admissible to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness as to the act charged. *State v. Reeves*, 234 Kan. 250, 255, 671 P.2d 553 (1983).

## II. Aggravated Burglary Instruction.

The aggravated burglary instruction, as originally submitted to the jury, was not objected to by the defendant. It is modeled after PIK Crim.2d 59.18 and states:

"The defendant is charged with the crime of aggravated burglary. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That the defendant knowingly entered or remained in the house at 409 North McKinley;
2. That the defendant did so without authority;
3. That the defendant had the intent to commit aggravated battery, a felony, therein;
4. That at the time there was a human being in the house; and
5. That this occurred on or about the 2nd day of December, 1983, in McPherson County, Kansas."

During deliberations, the jury asked the following question:

"In reference to Instruction 9, Item 3: Does the intent have to be only, at the time he entered the house, or at the time he remained in the house in the course of the argument, or could intent include ongoing intent which had been there previously."

The defendant objected on the basis that Kansas law requires the requisite intent to be present at the time of the entering. The trial court responded:

"The intent must exist at the time the defendant entered the house or at the time he remained in the house in the course of the argument."

The defendant contends that the trial court's response in the alternative was not a correct statement of the law in Kansas. He maintains that in Kansas, the requisite intent must be present upon entry or at the time the express or implied authority to enter is withdrawn.

Our aggravated burglary statute, K.S.A. 21-3716, states:

"Aggravated burglary is knowingly and without authority entering into or

remaining within any building, mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property in which there is some human being, with intent to commit a felony or theft therein."

This court has previously recognized that the crime of aggravated burglary may be committed by two alternative methods, as "entering into" and "remaining within" indicate two distinct factual situations. *State v. Brown*, 6 Kan. App. 2d 556, Syl. ¶ 4, 630 P.2d 731 (1981). The use of the disjunctive "or" in the statute requires a construction that aggravated burglary consist of:

"(1) knowingly and without authority *entering into* a building in which there is some human being, with intent to commit a felony or theft therein, *or*

"(2) knowingly and without authority *remaining within* a building in which there is some human being, with intent to commit a felony or theft therein." *State v. Reed*, 8 Kan. App. 2d 615, 622, 663 P.2d 680, *rev. denied* 234 Kan. 1077 (1983).

Ordinarily, the aggravated burglary instruction should employ only the phrase which is descriptive of the factual situation when the evidence is clear. If the evidence is not clear as to which proscription the defendant's conduct falls under, an instruction in the alternative is proper. See PIK Crim. 2d. 59.18, Notes on Use.

In the case before us, the trial court properly instructed in the alternative in the original aggravated burglary instruction. Either form of aggravated burglary, "entering into" or "remaining within," is supported by the evidence adduced at trial. A material factual dispute was presented by the evidence regarding defendant's authority to initially enter the home. The victim testified that she did not authorize the defendant to come into the home. However, the defendant's son indicated he unlocked the door for the defendant. It is undisputed that the victim, upon discovering the defendant's entry, demanded that he leave the house.

The question remains whether the formation of intent must occur at the time of entry, or at the time the express or implied consent to enter is withdrawn, or whether it can be formed in a "remaining within" form of aggravated burglary after consent is withdrawn. We reach the conclusion that to constitute the crime of aggravated burglary by "remaining within," there must be a concurrence of the criminal act and criminal intent. In this form of aggravated burglary, the accused remains after authority has

terminated. *People v. Vallero*, 61 Ill. App. 3d 413, 378 N.E.2d 549 (1978).

Kansas' aggravated burglary statute is modeled after Illinois law which contains similar statutory language. Ill. Ann. Stat. ch. 38, § 19-1 (Smith-Hurd 1985 Supp.). Illinois case law interpreting their burglary statute is therefore persuasive. The Illinois court examined burglary-by-remaining in *Vallero*. In a specially concurring opinion, Justice Stengel commented on the majority's inference that in *all* burglary cases the defendant must possess the requisite intent at the time of entry. Such construction of the burglary statute would render the "remains within" form of burglary superfluous. He noted:

"In the present case defendant had authority to enter the dairy and he did not intend to commit a theft or felony when he entered. Thus, he clearly cannot be guilty of burglary under alternative (1). Nor can defendant be guilty of burglary under alternative (2). Although defendant formed the requisite intent to steal after entering the dairy, he did not do the required unlawful act. That is, defendant did not 'without authority remain within' the dairy. (Ill. Rev. Stat. 1975, ch. 38, par. 19-1(a).) Defendant had authority to enter the dairy and that authority never terminated. His presence on the premises was at all times lawful. It is not the fact that defendant's criminal intent arose subsequent to entry which precludes his conviction of burglary in this case. Rather, it is the fact that defendant had authority to be in the dairy which requires us to reverse the instant burglary conviction.

"I believe that an intent to commit a theft or felony formed subsequent to a lawful entry may be a proper basis for a burglary conviction if it is proven that the defendant also committed the unlawful act of remaining in the building without authority. For example, if the defendant in this case had secreted himself in the dairy beyond the time it was open to the public with the intent to steal the checks after everyone else was gone he could properly be convicted of burglary. The fact his intent to steal was formed after he had lawfully entered the building would be inconsequential because his presence in the building beyond authorized hours would satisfy the 'without authority' element of the burglary statute and there would be a proper combination of unlawful act and criminal intent." 61 Ill. App. 3d at 416-17.

Other jurisdictions which proscribe two alternative acts, entering or remaining, for the crime of burglary also indicate that the necessary intent to commit a theft or felony may be formed after entry upon the premises. *Gratton v. State*, 456 So.2d 865 (Ala. App. 1984); *State v. Embree*, 130 Ariz. 64, 633 P.2d 1057 (1981); *State v. Papineau*, 53 Or. App. 33, 630 P.2d 904 (1981); *State v. Reams*, 47 Or. App. 907, 616 P.2d 498 (1980).

The "remaining within" form of burglary is not without prob-

lems, however. New York is one such state that defines burglary in the two alternatives "entering" or "remaining." As noted in the comments to the Model Penal Code, one could be prosecuted for burglary-by-remaining in the following example. A visitor to one's home becomes involved in an argument with the host, threatens to punch the host in the nose and is asked by the host to leave. If the visitor does not leave, but continues the threat, he or she could be found guilty of burglary. Model Penal Code § 221.1, p. 71 (Official Draft and Revised Comments) (1980). The obvious danger in such a situation is that the victim's actions in terminating the offender's authority to remain in the home (or in one's place of business, etc.) elevate the charges against the offender to burglary.

That is the precise problem presented by the facts before us. Assuming defendant was initially authorized to enter the house when his son unlocked the door, that authority was terminated when the defendant's wife demanded that he leave the house. By remaining in the house and committing aggravated battery on his wife, defendant was subject to being convicted of aggravated burglary. The unlawful act, remaining without authority, concurs with the criminal intent to commit aggravated battery and so satisfies the statute's elements.

Having concluded that the necessary intent may be formed at the time of lawful entry or after consent to an otherwise lawful entry has been withdrawn, we now examine the propriety of the trial court's response to the jury's question. The trial judge's further instruction to the jury on the formation of intent was as follows: "The intent must exist at the time the defendant entered the house or at the time he remained in the house in the course of the argument."

Requests for additional information or instructions after a jury has commenced deliberation are addressed to the trial court's discretion. *State v. Sully*, 219 Kan. 222, 228, 547 P.2d 344 (1976); *State v. Thomas*, 6 Kan. App. 2d 925, 932, 636 P.2d 807 (1981). The important consideration is that the jury be properly instructed on the essential issues presented at the trial, and this is particularly true in a criminal proceeding when the question presented by the jury involves the basic elements of the criminal offense on which the defendant is being tried. *State v. Bandt*, 219 Kan. 816, 824, 549 P.2d 936 (1976).

The intent of the defendant is an element of aggravated burglary and was a hotly contested issue at trial. The formation of intent to commit aggravated battery must have existed at the time his authority to be in the house was terminated or after he remained in the house without authorization. Whether "in the course of the argument" coincides with the termination of defendant's lawful entry would seem to be a factual determination for the jury. In any event, the evidentiary record conclusively establishes that the argument ensued after defendant was ordered out of the house. In light of the record before us, we conclude that the requisite intent was present during the course of argument, a time when defendant's authority had terminated. Considering the above and the defendant's objection to the supplemental instruction, we conclude the trial court's response was not error. Under our standard of review it cannot be declared that an abuse of discretion has occurred.

Affirmed.