934

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JIMMY GLOVER, Defendant-Appellant.

Second District   No. 2—94—0458

Opinion filed December 12, 1995.

G. Joseph Weller, Barbara R. Paschen, and Colleen M. Chang, all of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Jimmy Glover, appeals his conviction of burglary (720 ILCS 5/19—1(a) (West 1992)). The issue on appeal is whether defendant was proved guilty of burglary beyond a reasonable doubt. We affirm.

On March 17, 1993, defendant was indicted for burglary. The indictment alleged that defendant and Ray Allen committed the offense of burglary in that they, without authority, knowingly remained within a building known as St. Paul Lutheran Church with the intent to commit therein a theft. On December 10, 1993, the trial court denied defendant's motion to quash the arrest, motion to suppress defendant's statements, and motion to suppress the identification. On February 23, 1994, the cause proceeded to a jury trial.

Florence Monk, a member of the church, testified that on February 28, 1993, she was waiting by the door of the church for her husband. Two men came in, said they had car trouble, and asked if they could use a telephone. Monk testified that she told the men there was no telephone in the area but that she would get the pastor if they would wait there. Monk testified that she went downstairs and was away from the area less than one minute. When she came back, no one was there.

Scott Malme, the pastor at the church, testified that on February 28, 1993, he was in the sacristy of the church when Monk came to him and told him that some people wanted to speak to him. He walked through the basement of the church to the back entrance. He reached the stairs at the bottom of the area and saw two men leaving the building with vacuum cleaners in their arms. Malme testified that he asked if he could help the men. The men walked out of the church and Malme followed them. Malme testified that he told the men to stop and the men dropped the vacuum cleaners. Malme testified that he told the men that he was surprised that they were stealing from a church on a Sunday morning.

Malme testified that he grabbed the vacuum cleaners, placed them by the back door, and went into the church to call the police. Malme testified that he told one of the elders of the church to get the vacuum cleaners, but the vacuum cleaners were gone by the time the elder got to the back door. Malme testified that he gave a description of the men to the police and that he later identified the men in a showup at the police station.

Malme further testified that the vacuum cleaners were stored in a storage area under the stairs by the back door of the church. Malme testified that the restrooms were downstairs also.

Officer Timothy Eschen testified that on February 28, 1993, he was called to the church regarding a burglary. Eschen testified that he interviewed Malme about the incident and that Malme gave a description of the two men. Eschen testified that he then left the church and, as he was looking for a place to write his report, he observed walking down the street with a vacuum cleaner a black male who matched Malme's description of one of the men. Eschen testified that the man walking down the street was Allen. When Allen saw Eschen, Allen dropped the vacuum cleaner and started running. Eschen chased Allen but lost view of him for a short time. Eschen followed Allen's footprints in the snow to the front of a building. A passerby told Eschen that Allen had just gone up the stairs of the building.

Eschen testified that he waited for another officer to arrive. After

the other officer arrived, the officers entered the building. The front door of the building was open. The officers proceeded up the stairs and found open the door to an apartment on the second floor. Eschen testified that they knocked and announced, and when no one answered, the officers entered the apartment.

In the apartment, the officers found defendant and Allen sleeping in different bedrooms. Eschen testified that defendant stated that he had been in the apartment all day and had not gone anywhere. Eschen testified that in the apartment they saw clothing matching the description of the clothing the suspects were wearing. Eschen also testified that they saw wet boots in the apartment. The officers took the two men to the police station for a showup with Malme.

Detective Loy Rice testified that on March 1, 1993, he and Detective Keenan had defendant released into their custody to talk about the incident. They read defendant the *Miranda* warnings. Rice testified that they told defendant that there was no doubt in their minds that defendant was involved in the incident. They asked defendant if he was willing to return the remaining vacuum cleaner. Rice testified that, without offers of leniency or other inducement, defendant showed the officers where the vacuum cleaner was hidden. Rice testified that defendant stated that he would not have been caught if Allen had waited until after dark to go back for the vacuum cleaner.

Defendant stipulated that he was one of the two men present at the church on February 28, 1993. Defendant also stipulated that the clothes brought into court were the clothes seized at the apartment that day.

Defendant testified that he has a 1986 burglary conviction and a prior conviction of a drug-related offense. Defendant testified that he had resided at the apartment for six months at the time of the incident. Defendant testified that Allen, who had been evicted from his own apartment, had been living with defendant for two weeks at the time of the incident.

Defendant further testified that, on February 28, 1993, he and Allen went to the church to get financial help. They knocked on the door because the side entrance to the church was not open. A lady came to the door, and they asked her if they could see the reverend. The lady told them to wait there.

Defendant testified that Allen needed to use the restroom and went downstairs for three or four minutes. Defendant testified that Allen then came upstairs with two vacuum cleaners in his hands. Defendant testified that Allen asked defendant to open the door, and defendant refused. Defendant testified that Allen then pushed the door open with his body and walked out with the two vacuum cleaners.

Defendant testified that Malme came down and asked them why they were stealing from a church of God on a Sunday. Defendant testified that Allen then put the vacuum cleaners down and kept walking.

Defendant testified that he then turned around and asked in a soft tone if Malme wanted the vacuum cleaners back. Defendant testified that Malme turned around and said that he was going to call the police. Defendant testified that, as he was walking away, Allen went back and took the vacuum cleaners. Defendant testified that he and Allen left together and Allen hid the vacuum cleaners in the back of a house.

Defendant testified that he went home and Allen went somewhere else. Defendant testified that he had just gone to lie down when Allen came back with two other people. Defendant testified that one of the men wanted to buy one of the vacuum cleaners so Allen left to get it. Defendant testified that Allen did not come back with the vacuum cleaner, and the other people left.

Defendant testified that the police then arrived. Defendant testified that he did not tell the police that he had been sleeping all day and that he had not left the apartment. Defendant testified that Allen made that statement. Defendant testified that he told the officer where the vacuum cleaner was because he did not want to have anything to do with the incident.

On February 24, 1994, the trial court found defendant guilty of burglary. On April 12, 1994, the trial court sentenced defendant to 12 years' imprisonment. Defendant filed a timely notice of appeal.

On appeal, defendant argues that the State did not prove him guilty beyond a reasonable doubt of burglary. Section 19—1(a) of the Criminal Code of 1961 states in relevant part:

> "A person commits burglary when without authority he knowingly enters or without authority remains within a building *** with intent to commit therein a felony or theft." 720 ILCS 5/19—1(a) (West 1992).

Defendant argues that, although the indictment charged defendant with remaining without authority, the State did not prove beyond a reasonable doubt that defendant remained within the building without authority. When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, after considering all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Smith* (1992), 149 Ill. 2d 558, 565.

Defendant argues that this case is controlled by *People v. Vallero* (1978), 61 Ill. App. 3d 413. In *Vallero*, defendant and a companion

entered the office of a dairy to apply for a job. Defendant was told to be seated at a desk where an employee of the dairy was preparing payroll checks. Defendant asked to use the restroom. Defendant's companion left the building. When defendant returned from the restroom, he turned in the job application, which was blank, and left the building. The dairy employee later determined that several payroll checks were missing. The court reversed defendant's conviction of burglary by remaining and held that there was no evidence that defendant without authority remained in the building with the intent to commit theft. *Vallero*, 61 Ill. App. 3d at 415-16.

In the present case, defendant argues that, as in *Vallero*, the State did not prove that he remained in the building without authority with the intent to commit theft. We disagree. In *Vallero*, defendant had specific permission to be at the desk and to use the restroom. Therefore, the defendant in that case never exceeded the scope of his authority to be in the building. In the present case, there was ample evidence to indicate that defendant and his companion, after being instructed to stay at the door, went into the church, found the storage area where the vacuums were kept, and took the vacuums. Defendant no longer had the authority to remain in the church when he decided not to remain at the door as instructed and decided to go to another part of the church to steal the vacuum cleaners. Unlike in *Vallero*, where the defendant could accomplish a theft without exceeding the scope of his authority to be in the building, defendant, here, was able to steal the property only by first exceeding that scope by an unauthorized movement to another part of the church.

Defendant also argues that our decision in *People v. Peace* (1980), 88 Ill. App. 3d 1090, demonstrates that his permission to enter the church was never terminated. In *Peace*, defendant had car trouble and went to a house and asked a 12-year-old babysitter for permission to come inside and use the telephone. The babysitter consented and permitted defendant to enter the house. Defendant attacked the babysitter. Defendant was convicted of burglary by unlawful entry.

On appeal, we held that the State did not prove that defendant's entry was without authority. (*Peace*, 88 Ill. App. 3d at 1093.) However, we stated that defendant might arguably have been viewed as guilty under the second prong of the burglary statute (remaining without authority) except that the information expressly charged only an unauthorized entry. *Peace*, 88 Ill. App. 3d at 1093.

In the present case, defendant argues that, although he arguably might be guilty of unauthorized "entry to another part of the building," the indictment expressly charged him with remaining without

authority. However, we conclude that the trial court could have reasonably viewed defendant's conduct in moving, without authority, to another part of the building to constitute the act of unlawfully remaining within a building he had previously been permitted to enter. The evidence supported a finding that any original authority to enter the building was legally terminated by defendant's unauthorized movements therein. His then-continued presence at another location in the church for the purpose of committing a theft would constitute the act of "remaining." After considering all the evidence in the light most favorable to the prosecution, we cannot conclude that no rational trier of fact could have found defendant guilty beyond a reasonable doubt. See *Smith*, 149 Ill. 2d at 565.

For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

THOMAS and HUTCHINSON, JJ., concur.