**2016 IL 118674**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 118674)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JESSE TRAVIS BRADFORD, Appellant.

*Opinion filed March 24, 2016.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a bench trial, the circuit court of McLean County convicted the defendant, Jesse Bradford, of burglary and sentenced him to three years in prison. On appeal, defendant contended the State failed to prove beyond a reasonable doubt that he remained within a store without authority and with the intent to commit a theft therein, within the meaning of the burglary statute. See 720 ILCS 5/19-1(a) (West 2012). The appellate court rejected this contention and affirmed defendant's conviction. 2014 IL App (4th) 130288.

¶ 2     Defendant filed a petition for leave to appeal, pursuant to Illinois Supreme Court Rules 315 and 612 (Ill. S. Ct. R. 315 (eff. July 1, 2013); R. 612 (eff. Feb. 6,

2013)), which we granted. For the reasons that follow, we reverse the judgments of the appellate and circuit courts.

¶ 3                                    BACKGROUND

¶ 4         Defendant was charged by indictment with one count of burglary by "knowingly and without authority remain[ing] within the building of Walmart, with the intent to commit therein a felony or a theft," in violation of section 19-1(a) of the Criminal Code of 2012 (720 ILCS 5/19-1(a) (West 2012)).

¶ 5         At defendant's bench trial, the State presented the testimony of Stephen Norton, an asset protection associate at a Walmart store in Bloomington, Illinois. On July 19, 2012, Norton observed defendant enter the Walmart during the store's regular business hours. Norton recognized defendant and continued to observe all of his movements and activities inside the store. At all times, defendant stayed in areas of the store which were open to the public.

¶ 6         Defendant first picked up two DVDs from a store display near the cash registers. He then brought the DVDs to the customer service desk and conducted a "no-receipt" return in exchange for a Walmart gift card. Next, defendant went to the men's apparel department, where he picked up a hat, removed the price tag, and put it on. Defendant then went to the shoe department and picked up a pair of shoes. He placed the shoes in a Walmart bag which he produced from his pocket. Defendant proceeded to the cash registers, where he joined a male individual who had accompanied him to the store. Defendant paid for his friend's merchandise using the same gift card he had received in exchange for the DVDs. He did not attempt to pay for the hat or the shoes. When defendant and his friend left the store, Norton and his partner approached them and identified themselves. Defendant refused to speak and kept walking, while the friend ran in another direction. Norton called the Bloomington police department and followed defendant on foot until the police arrived.

¶ 7         Bloomington police officer Ryne Donovan testified that he was called to the scene of a retail theft. He saw defendant outside the Walmart store alongside two of the store's security personnel. Officer Donovan handcuffed defendant and brought him inside the store. Defendant confessed to taking the DVDs, conducting a fraudulent no-receipt return, and stealing a hat, shoes, and a 20-ounce bottle of Dr.

Pepper. He also confessed to paying for his friend's merchandise with the Walmart gift card he obtained from the DVDs. The State introduced into evidence a photograph depicting the hat, shoes, and Dr. Pepper found on defendant's person, as well as the two DVDs.

¶ 8 At the close of the State's case, the defense moved for a directed verdict. While conceding the evidence was sufficient to prove the crime of retail theft, defendant argued there was insufficient evidence of burglary as defined in section 19-1(a) of the Criminal Code (720 ILCS 5/19-1(a) (West 2012)). Defendant's motion was denied. The trial court convicted defendant of burglary as charged and sentenced him to three years in prison.

¶ 9 Defendant appealed, arguing there was no evidence that he remained within the store without authority as required by the burglary statute. The appellate court affirmed defendant's conviction. 2014 IL App (4th) 130288. The court held, as a matter of law, that a defendant's act of remaining within a building open to the public is " 'without authority' " if it is accompanied by an intent to steal. *Id.* ¶ 28. In the instant case, "[a]ny authority defendant *may* have had to remain in the store was implicitly withdrawn once he formed the intent to steal from Walmart." (Emphasis in original.) *Id.* ¶ 34. Although the court did not identify the precise moment at which defendant began to unlawfully remain in the store, it held that defendant remained without authority "as he moved through the store and stole merchandise." *Id.*

¶ 10 ANALYSIS

¶ 11 On appeal to this court, defendant repeats the same argument he raised in the appellate court, *i.e.*, that the State failed to prove him guilty of burglary beyond a reasonable doubt because there was insufficient evidence that he "remained within" the store without authority.

¶ 12 When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the required elements of the crime beyond a reasonable doubt. *People v. Belknap*, 2014 IL 117094, ¶ 67. It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *People v. Campbell*, 146

Ill. 2d 363, 375 (1992). Accordingly, a reviewing court will not substitute its judgment for the fact finder on questions involving the weight of the evidence or the credibility of the witnesses. *Id.* On appeal from a criminal conviction, we will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Id.*

¶ 13        Section 19-1(a) of the Criminal Code provides, in part, that "[a] person commits burglary when without authority he or she knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2012). Thus, under the statute, there are two ways to commit the crime of burglary: (1) by entering without authority and with the intent to commit a felony or theft, or (2) by remaining without authority and with the intent to commit a felony or theft. *Id.*

¶ 14        Defendant was charged with, and convicted of, the second type of burglary: "knowingly and without authority remain[ing] within the building of Walmart, with the intent to commit therein a felony or a theft," in violation of section 19-1(a). 720 ILCS 5/19-1(a) (West 2012). Because the parties disagree about what it means to remain without authority in a public place of business, we must first construe the statutory language before determining whether the State proved the essential elements of the crime beyond a reasonable doubt.

¶ 15        Our primary goal in statutory interpretation is to ascertain and effectuate the legislature's intent. *People v. Giraud*, 2012 IL 113116, ¶ 6. The best indication of this intent is the statutory language, given its plain and ordinary meaning. *Id.* The words and phrases in a statute should be construed in light of other relevant provisions and not in isolation. *People v. Gutman*, 2011 IL 110338, ¶ 12. We may consider the reason for the law, the problems to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.* Where the language is plain and unambiguous, it must be applied without resort to further aids of statutory construction. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). Where the language is ambiguous, however, we may consider external sources, such as legislative history, in order to discern the intent of the legislature. *Id.* The construction of a statute is a question of law which is reviewed *de novo*. *People v. Davison*, 233 Ill. 2d 30, 40 (2009).

¶ 16 Defendant contends that a person who commits theft after lawfully entering a public place is not guilty of burglary by remaining unless he exceeds the physical scope of his authority. In other words, burglary by remaining requires evidence that a defendant, with the intent to commit a felony or theft, is found in a place where the public is not authorized to be. Defendant relies on *People v. Vallero*, 61 Ill. App. 3d 413 (1978), and *People v. McDaniel*, 2012 IL App (5th) 100575, to support his interpretation of the burglary statute.

¶ 17 In *Vallero*, the defendant entered a dairy during business hours for the purpose of applying for a job. 61 Ill. App. 3d at 414. Defendant was instructed to complete a job application form in the office area of the dairy. After defendant left, it was discovered that a number of payroll checks were missing. Defendant later forged signatures on the checks and attempted to cash them. He was convicted of burglary, theft, and five counts of forgery. On appeal, the appellate court reversed the burglary conviction based on insufficient evidence that defendant remained in the dairy without authority. *Id.* at 415-16. According to the court, defendant could not be found guilty of burglary by remaining because he did not form the intent to steal until after he lawfully entered the dairy. Nor did he hide inside the dairy until after it had closed in order to commit a theft. *Id.* at 415 (citing *People v. Manning*, 46 Ill. App. 3d 877 (1977)). The concurring justice agreed there was no evidence that defendant "remained" in the dairy pursuant to the burglary statute, where defendant was permitted to enter the dairy, his presence on the premises was at all times lawful, and he did not remain there beyond authorized hours. *Id.* at 416 (Stengel, J., specially concurring).

¶ 18 In *McDaniel*, the defendant entered a Walmart store during the store's regular business hours. 2012 IL App (5th) 100575, ¶ 3. A loss prevention agent saw defendant pick up three fishing reels from a store shelf and remove them from their packages. Defendant then placed the empty packages back on the shelf and secreted the reels inside his coat. The store's agents stopped defendant after he walked past the cash registers without paying for the reels. *Id.* ¶ 4. A jury convicted defendant of burglary by unauthorized remaining, and the appellate court reversed defendant's conviction. *Id.* ¶ 9. The court found that defendant entered the store lawfully, never exceeded the physical scope of his authority, and left immediately after stealing the reels. At all times, defendant remained within the general retail area of the store. Thus, although defendant was guilty of retail theft, he was not guilty of burglary by remaining within the store without authority. *Id.* ¶¶ 16, 19.

¶ 19    The *McDaniel* court contrasted the facts in that case with those in *People v. Richardson*, 2011 IL App (5th) 090663, and *People v. Glover*, 276 Ill. App. 3d 934 (1995), where the defendants' burglary convictions based on unlawful remaining were affirmed. *McDaniel*, 2012 IL App (5th) 100575, ¶¶ 14-16. In those cases, the defendants' initial entrances onto the premises were lawful. However, the defendants then entered areas of the premises which were off-limits to the public, in order to commit thefts. *Id.* ¶¶ 14, 15, 16 (citing *Richardson*, 2011 IL App (5th) 090663, ¶ 17 (defendant stole cash and lottery tickets from an area of a store marked "employees-only"), and *Glover*, 276 Ill. App. 3d at 938-39 (defendant stole vacuum cleaners from a church's storage area after being told to stay by the entranceway)). The defendants in *Richardson* and *Glover* thus exceeded the scope of their physical authority by committing clear-cut acts of unauthorized remaining on the premises. *Id.* ¶ 16.

¶ 20    Based on the aforementioned case law, defendant argues that he never exceeded the scope of his physical authority to be in the Walmart. He contends that burglary by remaining is not intended to apply to ordinary shoplifting. Rather, it refers to situations in which a person lawfully enters a place of business, but, in order to commit a theft or felony: (1) hides and waits for the building to close; (2) enters an unauthorized area within the building; or (3) continues to remain on the premises after being asked to leave. Since defendant lawfully entered the Walmart during regular business hours, shoplifted merchandise within public areas of the store, and left while the store was still open, defendant argues that he committed retail theft, a Class A misdemeanor, rather than burglary, a Class 2 felony. 720 ILCS 5/16-25(f)(1) (West 2012) (retail theft under $300)[1]; 720 ILCS 5/19-1(b) (West 2012).

¶ 21    In the State's view, the facts in the instant case are distinguishable from those in *Vallero* and *McDaniel*. The State notes that, instead of leaving the premises immediately after committing a single act of theft, defendant lingered in the store and continued to steal merchandise following his fraudulent no-receipt return. Defendant's subsequent thefts, the State argues, are sufficient evidence that defendant's authority to remain in the store was implicitly withdrawn. The State proposes that an individual who engages in a "discrete act of remaining" within a

---

[1]There was no evidence at trial about the retail value of the merchandise stolen by defendant. For purposes of defendant's argument, however, the State does not dispute that the retail value did not exceed $300.

store with the intent to commit a theft is guilty of burglary by remaining. In support of this theory, the State relies on *People v. Weaver*, 41 Ill. 2d 434 (1968), which interpreted the portion of the burglary statute criminalizing burglary by entering. See 720 ILCS 5/19-1(a) (West 2012). The State urges this court to extend the analysis set forth in *Weaver* to burglary by remaining.

¶ 22    In *Weaver*, police officers driving by a well-lit Laundromat at night spotted the defendant standing near a vending machine, the door of which was open. Police discovered keys to the vending machine inside vehicles belonging to defendant and his codefendant, as well as more than $50 in coins in defendant's pocket. Defendant was convicted of burglary, possession of burglary tools, and theft. *Weaver*, 41 Ill. 2d at 435. On appeal to this court, defendant argued there was insufficient evidence of burglary since the Laundromat was open to the public at the time in question, he could have entered as a business invitee, and his presence in the store was as consistent with his innocence as with his guilt. This court rejected defendant's argument. *Id.* at 438-39.

¶ 23    We held that evidence that a defendant enters a place of business in order to commit a theft is sufficient to satisfy the "without authority" element of burglary by entering. *Id.* at 439. The "authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open." *Id.* Patrons of a Laundromat have no authority to enter if they intend to commit a theft inside the establishment. Consequently, evidence that the defendant entered the Laundromat with the intent of stealing from the vending machine—keys, coins, and the fact that defendant had no laundry—was sufficient to convict defendant of burglary by unauthorized entering. *Id.*

¶ 24    In the appellate court below, the court agreed with the State that *Weaver*'s definition of "without authority," for purposes of burglary by entering, also applies to burglary by remaining. Citing *Weaver*, the court held, "just as a defendant's *entry* is 'without authority' if it is accompanied by a contemporaneous intent to steal, so too must a defendant's *remaining* be 'without authority' if it also is accompanied by an intent to steal." (Emphases in original.) 2014 IL App (4th) 130288, ¶ 28. Throughout defendant's multiple acts of shoplifting, his purpose for being in the Walmart was not consistent with the purpose for which the store was open to the public. *Id.* ¶ 34. Thus, in the court's view, the evidence presented at trial

that defendant "remained" in the store with the intent to commit a theft was sufficient in itself to convict defendant of burglary by remaining within. *Id.*

¶ 25     After examining the statutory language and weighing the parties' arguments, we find that defendant presents the only reasonable reading of the burglary statute. In determining legislative intent, we may consider the consequences of construing the statute one way or another, and we presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *People v. Gutman*, 2011 IL 110338, ¶ 12. Defendant's interpretation offers a reasonable, workable test by which courts may evaluate whether a defendant is guilty of burglary by remaining within a place without authority. The State's version, on the other hand, is unworkable, has the potential to lead to absurdity, and is inconsistent with both the retail theft statute and the historical development of the burglary statute.

¶ 26     First, under the State's reading, adopted by the appellate court below, it is not clear what evidence would be sufficient to establish that a defendant "remains" within a public place in order to commit a theft. The appellate court provided no guidance as to what a defendant must do, or what duration of time he must spend in a place, to remain there without authority. Secondly, the court's ruling arbitrarily distinguishes between a defendant who shoplifts one item in a store and leaves immediately afterward, and a defendant who shoplifts more than one item or lingers inside a store before leaving. We do not believe the General Assembly intended to classify a single act of shoplifting as a Class A misdemeanor (720 ILCS 5/16-25(f)(1) (West 2012) (retail theft of property under $300)), while classifying several acts of shoplifting in a single course of conduct, totaling the same monetary value, as a Class 2 felony (720 ILCS 5/19-1(b) (West 2012) (burglary)).

¶ 27     Furthermore, we agree with defendant that the appellate court's analysis conflicts with the legislative intent in enacting the retail theft statute. 720 ILCS 5/16-25 (West 2012). The court's vague conclusion that "a defendant who develops an intent to steal after his entry into a public building may be found guilty of burglary by unlawfully remaining" (2014 IL App (4th) 130288, ¶ 28), encompasses nearly all cases of retail theft, effectively negating the retail theft statute. This statute was enacted in 1975 for the purpose of combating the growing problem of retail theft in Illinois. 720 ILCS 5/16-25 (West 2012); 79th Ill. Gen. Assem., House Proceedings, June 11, 1975, at 113 (statements of Representative Sangmeister). The law takes into account various factors, including the value of the property taken, a defendant's prior record, and how the property was acquired. 720 ILCS

5/16-25(f) (West 2012). Based on these factors, shoplifting can be charged in a range from a Class A misdemeanor to a Class 2 felony. *Id.* Standard retail theft of the type occurring in this case is a Class A misdemeanor punishable by up to 364 days in jail. 720 ILCS 5/16-25(f)(1) (West 2012); 730 ILCS 5/5-4.5-55(a) (West 2012). The burglary statute, on the other hand, does not consider any of these proportionality factors and classifies ordinary burglary as a Class 2 felony, punishable by three to seven years in prison. 720 ILCS 5/19-1(b) (West 2012); 730 ILCS 5/5-4.5-35(a) (West 2012).

¶ 28 Since the retail theft statute was enacted 14 years after the burglary statute's "remaining within" provision became law (Ill. Rev. Stat. 1961, ch. 38, ¶ 19-1), it strains logic to presume that the legislature intended most incidents of retail theft to be prosecuted as burglaries. Consequently, the appellate court's broad reading of the burglary statute cannot be reconciled with the clear expression of legislative intent in the retail theft statute.

¶ 29 Finally, we reject the appellate court's interpretation of the "remaining within" language for the additional reason that it is at odds with the historical development of the burglary statute. Prior to 1961, the Criminal Code contained five separate provisions pertaining to burglary: burglary, attempted burglary, burglar found in building, possession of burglary tools, and burglary with explosives. Ill. Rev. Stat. 1959, ch. 38, ¶¶ 84-88. The general burglary provision criminalized the unlawful entering of various buildings and structures. See Ill. Rev. Stat. 1959, ch. 38, ¶ 84; *People v. Myler*, 374 Ill. 72 (1940); *People v. Kelley*, 274 Ill. 556 (1916). The "burglar found in building" provision provided: "[w]hoever is found in any building, ship or vessel, with intent to commit the crime of murder, rape, robbery, larceny or other felony, shall be imprisoned in the penitentiary not less than one year nor more than five years." Ill. Rev. Stat. 1959, ch. 38, ¶ 86. In 1961, the general burglary provision was amended to include burglary by remaining without authority, and the separate "burglar found in building" provision was eliminated. Ill. Rev. Stat. 1961, ch. 38, ¶ 19-1. We can infer from these changes, and the fact that section 19-1 codified the existing law of burglary in Illinois, that the addition of language criminalizing "burglary by remaining" was intended to incorporate the crime of "burglar found in building." See Ill. Ann. Stat., ch. 38, ¶ 19-1, Committee Comments—1961, at 307-08 (Smith-Hurd 1970).

¶ 30 While the pre-1961 burglary statute did not define "burglar found in building," the dictionary defines the word "find" as "to discover" or "to obtain by searching."

Webster's New International Dictionary 330, 348 (1924). The "burglar found in building" provision necessarily implies, then, that the building or area where a defendant is found or discovered was closed to him or the public. It is unreasonable to say that a person is "found" or "discovered" when he is present in a store which is open to the public, during the store's regular business hours. Accordingly, based on the history of the statute, we agree with defendant that burglary by remaining in a public building comprises only those individuals who are found or discovered in a place where they are not authorized to be.

¶ 31    We thus hold that an individual commits burglary by remaining in a public place only where he exceeds his physical authority to be on the premises. Under this definition, burglary by remaining includes situations in which an individual enters a public building lawfully, but, in order to commit a theft or felony, (1) hides and waits for the building to close (*People v. Manning*, 46 Ill. App. 3d 877, 878-79 (1977), *aff'd in part and rev'd in part*, 71 Ill. 2d 132 (1978)), (2) enters unauthorized areas within the building (*Richardson*, 2011 IL App (5th) 090663, ¶¶ 4-5, 8; *Glover*, 276 Ill. App. 3d at 938-39), or (3) continues to remain on the premises after his authority is explicitly revoked. Conversely, an individual who enters a building lawfully, shoplifts merchandise within areas which are open to the public, then leaves during business hours, is guilty of ordinary retail theft. See *McDaniel*, 2012 IL App (5th) 100575, ¶ 19.

¶ 32    In the case at bar, the State failed to prove that defendant remained within the Walmart without authority within the meaning of the burglary statute. See 720 ILCS 5/19-1(a) (West 2012). Defendant entered the store during regular hours, never entered areas of the store which were off-limits to the public, shoplifted several items, then left while the store was open. Defendant did not exceed the scope of his physical authority as a member of the public to be in the store. The evidence presented by the State with respect to the element of unauthorized remaining is so insufficient as to justify a reasonable doubt that defendant committed burglary.

¶ 33                                    CONCLUSION

¶ 34    We conclude that no rational trier of fact could have found beyond a reasonable doubt that defendant committed the crime of burglary by remaining in the store without authority. We further hold that the appellate court erred in concluding that

there was sufficient evidence upon which a fact finder could have based defendant's conviction for burglary.

¶ 35    For the aforementioned reasons, we reverse the judgments of the appellate and circuit courts.


¶ 36    Judgments reversed.